## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KIRUSA, INC. | : |
| Plaintiff, | : |
| v. | : Civil Action No.: |
| INSTAGRAM, LLC., | : **JURY TRIAL DEMANDED** |
| Defendant. | : |

## COMPLAINT

Plaintiff Kirusa, Inc. ("Plaintiff" or "Kirusa"), by its attorneys, for its complaint against Defendant Instagram, LLC ("Defendant" or "Instagram") alleges as follows:

### I. NATURE OF THE ACTION

1. This is an action by Kirusa for a declaratory judgment of non-infringement and non-dilution of Defendant's INSTAGRAM trademark rights. Kirusa seeks a declaration that its use of its INSTAVOICE mark does not infringe or dilute Defendant's rights in its INSTAGRAM trademarks.

2. On January 1, 2013, the United States Patent and Trademark Office ("USPTO") issued a trademark registration to Kirusa for the INSTAVOICE trademark after a determination that INSTAVOICE was not confusingly similar to other registered trademarks, including those of the Defendant, and after a 30-day opposition period during which nobody, including Defendant, objected to the registration of INSTAVOICE. The USPTO issued a trademark registration for INSTAVOICE on January 1, 2013. The certificate of registration bearing number 4269874 is attached hereto as Exhibit A.

3. The INSTAGRAM and INSTAVOICE trademarks identify distinct digital services and offer distinct commercial impressions to their users. *Compare* Exhibit B (Instagram App and Website) and Exhibit C (INSTAVOICE App and Website), attached hereto.

4. Yet, on April 22, 2015, more than two years after registration of Kirusa's INSTAVOICE trademark, and as part of a larger campaign to cleanse the USPTO principal register of trademarks utilizing the INSTA and GRAM prefixes and suffixes, Defendant e-mailed Kirusa's counsel a cease and desist letter. *See* Exhibit D.

5. Despite the non-distinctive nature of INSTA and GRAM — the mark is a composite of the prefix "insta" derived from "instamatic" cameras and the suffix "gram" from the word "telegram" — Defendant has, before the Trademark Trial and Appeal Board, opposed over 200 existing trademarks or trademark applications with little apparent consideration for the merits of any individual opposition. Defendant has engaged in this objectively baseless litigation in an unlawful effort to prevent the registration and/or use of marks that businesses adopted in good faith, in certain cases, as here, after considering public statements by Defendant that others' use of the INSTA and GRAM formatives would not be considered to be infringing by Defendant. Many of the third-party marks that have been the subjects of Defendant's objection are actually used or proposed for use in connection with goods and services that are wholly distinct from the goods and services Defendant offers in connection with its marks.

## II. THE PARTIES

6. Kirusa is a Delaware corporation having a place of business at 139 South Street, Suite 205, New Providence, New Jersey 07922.

7. Instagram is a Delaware limited liability company having its principal place of business at 1601 Willow Road, Menlo Park, California 94025.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and under the Lanham Act, 15 U.S.C. § 1125(a) and (c).

9. This Court also has jurisdiction for Declaratory Judgment of non-infringement and non-dilution of trademark rights under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201.

10. Instagram is subject to personal jurisdiction in this Court because it is domiciled in Delaware, having Delaware as its place of incorporation.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Instagram is incorporated in this judicial district.

## IV. FACTUAL BACKGROUND

A. **Kirusa, Inc**.

12. Kirusa was incorporated in Delaware in August 2000.

13. In 2001, Kirusa began operations after receiving venture capital funding for the development of mobile communications products based upon its proprietary mobile technologies invented by its founders and several co-inventors.

14. Subsequently, Kirusa established international subsidiaries in India, Nigeria, Ghana, Tanzania, Rwanda, Ivory Coast, and Democratic Republic of the Congo.

15. Kirusa's voice short message service ("Voice SMS") technology was first incorporated into a mobile device product in 2005.

16. Currently, Kirusa's Voice SMS and other mobile technologies are incorporated into a family of mobile apps, known by the trademarks INSTAVOICE, INSTAVOICE ReachMe, and INSTAVOICE Ring ("INSTAVOICE Apps"), and their related services.

17. The INSTAVOICE Apps focus on three aspects of mobile *telephone* messaging: voicemail, missed calls, and calls.

18. Kirusa's target market audience is typically business users, older individuals who rely upon telephone voice communication and voicemail as a predominant form of digital communication, and U.S residents who wish to stay in telephone contact with relatives and friends in foreign countries, particularly, those located in Africa, where the user base of the INSTAVOICE App and related services is very large.

19. In the United States, the INSTAVOICE App is a free mobile device download. In 2017, Kirusa began offering a premium level service that is available for purchase within the app. In several other countries, Kirusa has licensing agreements with mobile operators who pay Kirusa for offering INSTAVOICE services to their subscribers.

20. Kirusa does not advertise in the INSTAVOICE Apps.

21. Kirusa has acquired considerable goodwill for its INSTAVOICE trademarks by investing millions of dollars worldwide in marketing, sales, and promotional activities.

**B.    The INSTAVOICE Trademark**

22. In 2011, Kirusa adopted the INSTAVOICE trademark after a search of the United States Patent and Trademark Office ("USPTO") database and other online sources.

23. It selected INSTAVOICE for two reasons: (1) Kirusa liked the association of the term "insta" with notion of "instant" or "fast" because it captured the essence of Kirusa's voice SMS technology; and (2) the Internet domain "instavoice.com" was available for purchase.

24. Kirusa was aware of Instagram's use of the "insta" formative but, like Instagram itself, recognized that it was a generic term made famous by Kodak's "instamatic" camera brand, which was a clever portmanteau of "instant" and "automatic."

4

25. Although Kirusa had no immediate intention of using Instagram's application programming interface ("API"), Kirusa was aware of and considered public statements made by the Defendant aimed at software developers with respect to use of trademarks bearing the INSTA formative.

26. The relevant portion of the terms of use presented on Instagram's website in April 2012 are reproduced from a screen capture taken from www.web.archive.org below and attached hereto as Exhibit E:

**INSTAGRAM API TRADEMARK AND BRAND GUIDELINES**

- You are not allowed to use the word "Instagram", "IG" or any variation in your product name, domain name, or images.

- You are not allowed to use the Instagram icon or logo unless specifically allowed in the development documentation.

- If you do incorporate Instagram's logos, you must include the following statement clearly on your website: "This [application website] uses the Instagram™ API and is not endorsed or certified by Instagram or Burbn, Inc. All Instagram™ logos and trademarks displayed in this [application website] are property of Burbn, Inc."

- *While you cannot use the word "Instagram" or "IG" in your product's name, it's ok to use one (but not both) of the following: "Insta" or "gram."*

- Note that we reserve the right to reject any use of these terms in connection with the use of the Instagram API. (Emphasis supplied).

27. Instagram's policy of allowing, or even encouraging, the development of businesses based on the Instagram technical platform that incorporate the formative "insta" or "gram" in their name reflected Instagram's understanding and tacit admission of the weakness of these "insta" and "gram" elements outside of Defendant's composite INSTAGRAM marks. In a 2012 "FAQ" section on the Instagram website, Instagram explained the origins of its trademark:

> When we were kids we loved to play around with cameras. We loved how different types of old cameras marketed themselves as "instant" - something we take for granted today. We also felt that the snapshots people were taking were kind of like telegrams in that they got sent over the wire to others - so we figured why not combine the two?

5

A copy of Instagram's FAQ is attached hereto as Exhibit F.  By its own admission, Instagram has acknowledged that the component parts of its mark are descriptive and, hence, weak on their own. Accordingly, those component parts are in the public domain and are not protectable.

28. On May 2, 2012, Kirusa filed an application with the USPTO to register the INSTAVOICE mark under International Class 038 for:

> Communication services, namely, transmission of voice, audio, visual images and data by telecommunications networks, wireless communication networks, the Internet, information services networks and data networks; Telecommunication services, namely, transmission of voice, data, graphics, images, audio and video by means of telecommunications networks, wireless communication networks, and the Internet.

29. INSTAVOICE services are related to telephone communications and do not identify a photo or video sharing social networking platform as does INSTAGRAM, although, like most messaging services, the INSTAVOICE service permits sending of photos and videos by users directly to other users.

30. Instagram, like Facebook, Twitter, Snapchat, and other similar platforms, is a social media service.

31. Social media services are complex networks that permit users to interact on many levels by, for example, creating, sharing, posting, following, liking, and commenting about digital content.

32. Kirusa's INSTAVOICE telephony service is not a social media service.

33. Kirusa's INSTAVOICE service is not competitive with that of INSTAGRAM.

34. Kirusa's customers purchase the INSTAVOICE app for enhanced voicemail and calling services, not for social media services.

35. Instagram does not offer voicemail, voice message, missed call, or calling services.

36. On August 1, 2012, after the USPTO determined INSTAVOICE was not confusingly similar to other registered trademarks, including Defendant's INSTAGRAM registered marks, the USPTO noticed INSTAVOICE for publication.

37. On August 21, 2012, the USPTO published the INSTAVOICE mark in its *Official Gazette*. During the 30-day opposition period, no party opposed Kirusa's trademark application.

38. On January 1, 2013, the USPTO issued Kirusa a certificate of registration for the INSTAVOICE mark, Exhibit A.

39. Defendant had actual or constructive knowledge of Kirusa's adoption and use of the INSTAVOICE trademark and URL (which incorporated and/or referenced Kirusa's INSTAVOICE mark) in 2012. Despite its knowledge, Defendant did not object to Kirusa's use of the trademark.

40. Over approximately the past six years, Kirusa has used and promoted its mark INSTAVOICE and the goods and services offered under the INSTAVOICE mark extensively in commerce.

41. To Kirusa's knowledge, its use of the INSTAVOICE marks has never caused an instance of consumer confusion as to the source, affiliation, or sponsorship of any of its products or services.

42. On April 22, 2015, Kirusa's counsel received an e-mail cease and desist letter from Instagram's counsel demanding that Kirusa limit the goods of its U.S. trademark registration and certain other foreign trademark registration, not to share data with Instagram and not to file any INSTA-formative marks involving "transmission of images, photos, or video." *See* e-mail, Exhibit D.

43. Thereafter, months of on-again off-again discussions between Kirusa and Instagram followed; then, without explanation, on April 27, 2017, Instagram ceased all contacts with Kirusa until Sept 13, 2017 when Instagram filed a Cancellation Action with the Trademark Trial and Appeal Board ("TTAB") against Kirusa alleging that the INSTAGRAM marks have priority over those of Kirusa, that they create similar commercial impressions, and that goods claimed by Kirusa are identical to those of INSTAGRAM thereby creating confusion in the market place and deceiving the public (Proceeding No. 92066870). A copy of the Cancellation Petition is attached as Exhibit G.

44. On or about August 2017, Facebook, Inc. ("Facebook"), Defendant's parent corporation, and/or Defendant, in retaliation for use of the INSTAVOICE trademark, blocked INSTAVOICE Apps from linking with Facebook.

45. On or about November 30, 2017, in retaliation for use of the INSTAVOICE trademark, Defendant and Facebook closed Kirusa's accounts for INSTAVOICE Apps on the Instagram platform and removed Kirusa's pages for INSTAVOICE Apps from the Facebook platform, along with the list and identities of all of INSTAVOICE Apps' hundreds of thousands of followers.

46. On or about March 2018, in retaliation for use of the INSTAVOICE trademark, Defendant and/or Facebook began disabling Facebook accounts of Kirusa employees used to link Kirusa's services to Facebook with Kirusa apps other than INSTAVOICE. Defendant and/or Facebook disabled accounts using kirusa.com e-mail addresses, as well as accounts using other e-mail addresses when the accounts were associated with Kirusa's services.

47. Subsequent to the filing of the Cancellation Action, the parties engaged in further settlement discussions but could not reach agreement.

### C. The INSTAGRAM Trademarks

48. Instagram owns six registrations of the INSTAGRAM trademark, all of which it claims it was using in commerce on October 6, 2010 (Registration Nos. 4146057, 4822600, 4827509, 4856047 4863595, and 4863594) and that identify the following goods and services:

- Telecommunications services, namely electronic transmission of data, messages, graphics, images and information;
- Downloadable computer software for modifying the appearance and enabling transmission of photographs;
- Computer software for the collection, editing, organizing, modifying, transmission, storage and sharing of data and information;
- Computer services, namely providing an interactive website featuring technology that allows users to manage their online photograph and social networking accounts;
- Providing use of online software for enabling transmission of images and audiovisual and video content.

49. Instagram owns one INSTA formative trademark registration for INSTAMEET (Reg. No. 4525966), which Defendant claims was in use in commerce by December 13, 2013.

50. Instagram owns two trademark registrations for the term INSTA (Reg. Nos. 5061916, 4531884) both of which are applied to its camera logo and claiming first use dates of September 20, 2011 and November 2010, respectively.

51. None of Instagram's trademarks are registered to identify telephonic services.

52. There is no likelihood of confusion as to the source, affiliation, or sponsorship of the Parties' respective products, services, or businesses. Accordingly, Kirusa's INSTAVOICE mark does not infringe any of Defendant's rights in its INSTAGRAM marks.

53. Kirusa's use and registration of its INSTAVOICE mark is not likely to dilute Defendant's INSTAGRAM marks.

54. Defendant's claims are invalid given the application of the equitable defenses of laches, acquiescence, and estoppel as complete defenses to those claims.

## COUNT I
## DECLARATORY JUDGMENT FOR
## NO FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

55. Kirusa incorporates by reference the allegations in the preceding paragraphs of the Complaint.

56. A real and actual dispute, case, and/or controversy exists between the Parties as to a state of facts, in particular Kirusa's past and continued use of its INSTAVOICE mark and the registrability of its INSTAVOICE mark.

57. Kirusa and Defendant have adverse and antagonistic interests in the subject matter of the dispute, case, and/or controversy.

58. Kirusa seeks a declaratory judgment that the INSTA formative is generic and that the INSTAVOICE and INSTAGRAM trademarks are distinctive by reason solely of their combination of the INSTA formative with the generic terms, "voice" and "gram," and that Defendant has no claim to trademark rights in any marks utilizing the INSTA formative apart from INSTAGRAM, INSTAMEET, and the camera logo of Reg. Nos. 5061916, 4531884.

59. Kirusa seeks a declaratory judgment that its past and continued use of the INSTAVOICE mark is not intended or likely to cause confusion, mistake, or deception as between the source, association, or affiliation of the Parties' respective products, services, or businesses, and therefore does not infringe Defendant's INSTAGRAM marks under the Lanham Act, 15 U.S.C. § 1114.

60. Kirusa further seeks a declaration that its past and continued use of the INSTAVOICE mark has not and does not jeopardize the goodwill, if any, symbolized by Defendant's registered INSTAGRAM trademarks, nor does it cause any injury to Defendant under the Lanham Act.

61. In the alternative, Kirusa seeks a declaration that Defendant's claims of trademark infringement and trademark dilution are barred by the equitable defenses of laches, estoppel, and acquiescence.

## COUNT II
## DECLARATORY JUDGMENT FOR
## NO COMMON LAW INFRINGEMENT

62. Kirusa incorporates by reference the allegations in the preceding paragraphs of the Complaint.

63. A real and actual dispute, case, and/or controversy exists between the Parties as to a state of facts, in particular Kirusa's past and continued use of its INSTAVOICE mark in commerce.

64. Kirusa and Defendant have adverse and antagonistic interests in the subject matter of the dispute, case, and/or controversy.

65. Kirusa seeks a declaratory judgment that its past and continued use of the INSTAVOICE mark is not intended or likely to cause confusion, mistake, or deception as between the source, association, or affiliation of the Parties' respective products, services, or businesses, and does not infringe Defendant's INSTAGRAM marks under the common law.

66. Kirusa further seeks a declaration that its past and continued use of the INSTAVOICE mark has not and does not jeopardize the goodwill, if any, symbolized by Defendant's registered INSTAGRAM trademarks, nor does it cause any injury to Defendant under the common law.

67. In the alternative, Kirusa seeks a declaration that Defendant's claims of trademark infringement are barred by the equitable defenses of laches, estoppel, and acquiescence.

## **COUNT III**
## **DECLARATORY JUDGMENT FOR**
## **NO FALSE DESIGNATION OF ORIGIN**
## **(15 U.S.C. § 1125(a))**

68. Kirusa incorporates by reference the allegations in the preceding paragraphs of the Complaint.

69. A real and actual dispute, case, and/or controversy exists between the Parties as to a state of facts, in particular Kirusa's past and continued use of its INSTAVOICE mark.

70. Kirusa and Defendant have adverse and antagonistic interests in the subject matter of the dispute, case, and/or controversy.

71. Kirusa seeks a declaratory judgment that its past use and continued use of the INSTAVOICE mark is not intended or likely to cause confusion, mistake, or deception as between the source, association, or affiliation of the Parties' respective products, services, or businesses, and does not constitute false designation of origin with Defendant's INSTAGRAM marks under the Lanham Act, 15 U.S.C. § 1125(a).

72. Kirusa further seeks a declaration that its past and continued use of the INSTAVOICE mark has not and does not jeopardize the goodwill, if any, symbolized by Defendant's registered INSTAGRAM trademarks, nor does it cause any injury to Defendant under the Lanham Act.

73. Kirusa further seeks a declaration that Defendant is prevented from enforcing its trademark rights based on equitable principles of laches, estoppel, and/or acquiescence.

## COUNT IV
## DECLARATORY JUDGMENT FOR
## NO UNFAIR COMPETITION
## (15 U.S.C. § 1125(a))

74. Kirusa incorporates by reference the allegations in the preceding paragraphs of the Complaint.

75. A real and actual dispute, case, and/or controversy exists between the Parties as to a state of facts, in particular Kirusa's past and continued use of its INSTAVOICE mark.

76. Kirusa and Defendant have adverse and antagonistic interests in the subject matter of the dispute, case, and/or controversy.

77. Kirusa seeks a declaratory judgment that its past and continued use of the INSTAVOICE mark is not intended or likely to cause confusion, mistake, or deception as between the source, association, or affiliation of the Parties' respective products, services, or businesses, and does not unfairly compete with Defendant under the Lanham Act, 15 U.S.C. § 1125(a).

78. Kirusa further seeks a declaration that its past and continued use of the INSTAVOICE mark has not and does not jeopardize the goodwill, if any, symbolized by Defendant's registered INSTAGRAM trademarks, nor does it cause any injury to Defendant under the Lanham Act.

79. Kirusa further seeks a declaration that Defendant is prevented from enforcing its trademark rights based on equitable principles of laches, estoppel and/or acquiescence.

## COUNT V
## DECLARATORY JUDGMENT
## FOR NO DILUTION
## (15 U.S.C. § 1125(c))

80. Kirusa incorporates by reference the allegations in the preceding paragraphs of the Complaint.

81. A real and actual dispute, case, and/or controversy exists between the Parties as to a state of facts, in particular Kirusa's past use and continued use of its INSTAVOICE mark and the registrability of its INSTAVOICE mark.

82. Kirusa and Defendant have adverse and antagonistic interests in the subject matter of the dispute, case, and/or controversy.

83. Kirusa seeks a declaratory judgment that its past use and continued use of the INSTAVOICE mark is not likely to cause dilution of Defendant's INSTAGRAM marks under the Lanham Act, 15 U.S.C. § 1125(c).

84. Kirusa further seeks a declaration that its past and continued use of the INSTAVOICE mark has not and does not cause blurring of or tarnish Defendant's registered INSTAGRAM trademarks, nor does it cause any injury to Defendant under the Lanham Act.

85. In the alternative, Kirusa seeks a declaration that Defendant's claims of trademark infringement and trademark dilution are barred by the equitable defenses of laches, estoppel, and acquiescence.

**COUNT VI
DECLARATORY JUDGEMENT ON
UNFAIR COMPETITION UNDER THE DELAWARE
UNIFORM DECEPTIVE TRADE PRACTICES ACT
(6 Del. C. § 2531 et seq.)**

86. Kirusa incorporates by reference the allegations in the preceding paragraphs of the Complaint.

87. A real and actual dispute, case, and/or controversy exists between the Parties as to a state of facts, in particular Kirusa's past use and continued use of its INSTAVOICE mark and the registrability of its INSTAVOICE mark.

88. Kirusa and Defendant have adverse and antagonistic interests in the subject matter of the dispute, case, and/or controversy.

89. Kirusa seeks a declaratory judgment that under Delaware state law that, as a result of its past use and continued use of the INSTAVOICE mark, it is not:

(1) passing off goods or service as those of another;

(2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; or

(4) engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

## COUNT VII
## DECLARATORY JUDGMENT ON
## EQUITABLE GROUNDS – ACQUIESENCE, LACHES, ESTOPPEL

90. Kirusa incorporates by reference the allegations in the preceding paragraphs of the Complaint.

91. In choosing the INSTAVOICE mark and continuing to invest resources in developing the goodwill associated with the mark, Kirusa relied, among other things, upon the Defendant's affirmative public statements in the form of its terms of use that informed Kirusa that it was permissible to use "insta" in a product name. Defendant thereby expressly consented to, and actively encouraged, Kirusa's adoption and use of the INSTAVOICE mark and is therefore estopped from enforcing its rights against Kirusa. Defendant was aware of Kirusa's use and promotion of its INSTAVOICE mark since at least as early as August 2012.

92. Until service of Defendant's cease and desist letter upon Kirusa in April 2015, Defendant did not object to Kirusa's use and promotion of its INSTAVOICE mark for nearly three years. In so doing, Defendant knowingly acquiesced to Kirusa's adoption and use of its INSTAVOICE mark.

93. Kirusa relied on Defendant's unreasonable period of silence and inaction in continuing to use and promote its INSTAVOICE mark, spending considerable resources and obtaining valuable goodwill through use of the INSTAVOICE mark.

94. Kirusa relied on Defendant's encouragement of third parties to use the component "INSTA" in using and promoting its services in connection with the INSTAVOICE mark.

95. Defendant's authorization of use of "insta" or "gram" under its own policies and conduct constitutes an acquiescence of its rights (if any it had) in the weak, descriptive component parts of its INSTAGRAM marks. Further, Defendant's delay in pursuing enforcement of its purported rights in the inherently descriptive component parts of its INSTAGRAM marks was unreasonable.

96. Kirusa is unfairly prejudiced by Defendant's Cancellation Action and would be further unfairly prejudiced by any further attempt by Defendant to institute any additional action or proceeding with respect to Kirusa's use or registration of its INSTAVOICE mark in connection with its business given Defendant's unreasonable delay.

97. Thus, Defendant is estopped from enforcing any rights it has in the component parts of its INSTAGRAM marks (which rights Kirusa denies) or its INSTAGRAM marks as a whole based on the doctrines of acquiescence, estoppel, and laches.

**PRAYER FOR RELIEF**

WHEREFORE, Kirusa prays for:

1. A Declaratory Judgment that:

    a. Finds that the INSTA formative is generic and that Defendant possesses no trademark rights in the formative apart from its mark as a whole.

    b. Kirusa's past, present, and continued use and registration of the mark INSTAVOICE in connection with its business does not and will not infringe or dilute any of Instagram's trademark or trade name rights, or unfairly compete with Defendant, or falsely designate the origin of Kirusa's services, or otherwise constitute a violation of any of Defendant's rights under federal or state law;

    c. Defendant is prevented from enforcing its rights in the INSTAGRAM marks or the mark's non-protectable component parts against Kirusa as the result of equitable defenses of laches, estoppel and/or acquiescence.

    d. Defendant, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation or otherwise in privity with them, be permanently enjoined and restrained from instituting, prosecuting, or threatening any action against Kirusa, or any of its affiliates, or anyone in privity with Kirusa, with respect to Kirusa's use or registration of INSTAVOICE in connection with its business;

    e. Prohibits Defendant or its parent company from blocking Kirusa's access to Facebook or Instagram and orders both companies to restore INSTAVOICE or Kirusa-related accounts and pages removed by them;

   f. Prohibits Defendant or its parent company from denying Kirusa's access to Facebook or Instagram for purposes of promoting its INSTAVOICE products consistent with those platforms' terms of service;

   g. Prohibits Defendant or its parent from denying Kirusa the right to link its INSTAVOICE Apps to Facebook or Instagram for purposes consistent with those platforms' terms of service.

 2. Such other and further relief as the Court may deem just and proper.

Dated: Sept. 21, 2018

*Of Counsel:*

Lawrence A. Husick
Adam G. Garson
LIPTON, WIENBERGER & HUSICK
201 N. Jackson St.
Media, PA 19063
Telephone: (610) 565-7630
Facsimile: (610) 565-7631
Email: agarson@lwh-law.com

and

Ralph Jacobs, Esquire
JACOBS KIVITZ & DRAKE LLC
1525 Locust Street, 12th Floor
Philadelphia, PA 19102
Telephone: (215) 732-2655
Email: rjacobs@jacobs-kivitz-drake.com

**DEVLIN LAW FIRM LLC**

*/s/ James M. Lennon*
James M. Lennon
1306 North Broom Street, Suite 1
Wilmington, DE 19806
Telephone: (302) 449-7676
Email: jlennon@devlinlawfirm.com

*Attorneys for Plaintiff Kirusa, Inc.*